**Robert PETERSON, Plaintiff,**

v.

**NATIONAL TELECOMMUNICATIONS AND INFORMATION ADMINISTRATION, et. al, Defendants.**

**No. CIV.A.1:06–CV–96.**

United States District Court,
E.D. Virginia.
Alexandria Division.

April 17, 2006.

James White Deacon, II, Orrick Herrington & Sutcliffe LLP, Washington, DC,

James Edward Houpt, Orrick, Herrington & Sutcliffe, LLP, Sacramento, CA, for Plaintiff.

Gerard J. Mene, United States Attorney's Office, Alexandria, VA, Peter Joseph Riebling, Roger Patrick Furey, Katten Muchin Zavis & Rosenman, Washington, DC, for Defendants.

## MEMORANDUM OPINION

LEE, District Judge.

THIS MATTER is before the Court on Plaintiff Robert Peterson's Motion for Preliminary Injunction. Peterson challenges the National Telecommunications and Information Administration's ("NTIA") decision to prohibit anonymous proxy registrations for websites registered on the ".us" domain, owned by the Department of Commerce ("DoC") and administered by the NTIA. The issues before the Court are: (1) whether the Court should grant Plaintiff Robert Peterson's Motion for a Preliminary Injunction to enjoin the NTIA from requiring parties who contract for the use of domain names in ".us" to provide direct contact information for the domain name because such a requirement violates Plaintiff's First Amendment right to anonymous speech; (2) whether the NTIA violated the Administrative Procedure Act by failing to provide public notice and comment before implementing a rule requiring parties who contract for the use of domain names in ".us" to provide direct contact information for the domain name; and (3) whether Mr. Robert Peterson has standing to bring a claim against NTIA seeking to enjoin them from requiring him to provide direct contact information for

the domain name, where he has not shown an injury in fact.

The Court denies Plaintiff's Motion for a Preliminary Injunction because (1) Plaintiff will not suffer harm, the government and public face extensive harm, and the contact information requirement does not seek information about the identity of speakers featured on the website nor does it regulate content presented therein; (2) the Administrative Procedure Act's notice and comment requirements do not apply to governmental action undertaken by contract; and (3) Plaintiff does not have standing to bring a claim against NTIA seeking to enjoin them from requiring him to provide direct contact information for the domain name because he has not shown an injury in fact.

### I. Background

The Internet is a world-wide system of connected public and private computer networks organized by regions known as domains. *See generally Island Online v. Network Solutions, Inc.,* 119 F.Supp.2d 289, 292 (E.D.N.Y.2000). The United States operates a top-level domain ("TLD"), ".us," administered by the Department of Commerce ("DoC") through the National Telecommunication and Information Administration ("NTIA"). Originally restricted to state and local government web sites, the DoC began considering whether to open the ".us" domain up to individual U.S. citizens and businesses. Def.'s Opp'n at 4. After soliciting public comments, the DoC published a statement of work outlining the requirements for public participation on the ".us" domain.[1] *Id.* at 5. The DoC, through NTIA, also contracted with Defendant NeuStar, Inc.

---

1. Among other regulations, the statement of work requires the manager of the ".us" domain "to maintain an accurate and up-to-date database of contact information for domain name registrants similar to the 'WHOIS' database maintained by other domains ... this database ... [must] include 'the name and postal address for the domain holder' and a contact telephone number for the technical manager of the website." Def.'s Opp'n at 5.

to manage the ".us" domain. The NeuStar contract incorporated the requirements of the statement of work. *Id.*

In January, 2005, NTIA discovered that registration companies were allowing registrants to register domains by proxy, that is registered anonymously without providing contact information as required by the statement of work and the NeuStar contract. NTIA consequently instructed NeuStar to prevent its registrars from offering proxy (anonymous) registration after February 16, 2005, and bring existing registrations in compliance no later than January 26, 2006. *Id.* at 7. Plaintiff registered his website, www.pcpcity.us, by proxy through GoDaddy.com, which enabled him to avoid providing contact information as required by the statement of work and the NeuStar contract.[2]

Pursuant to GoDaddy.com's agreement with NeuStar and NeuStar's contract with NTIA, GoDaddy.com will publish Plaintiff's contact information in the WHOIS database unless Plaintiff de-registers his website by January 26, 2006. Plaintiff initiated this litigation, requesting an emergency temporary restraining order ("TRO") on January 25, 2006, to enjoin NTIA and NeuStar from requiring him to publicize his contact information or de-register. Because the deadline has passed and a TRO would be moot, Plaintiff has instead requested that the Court issue a preliminary injunction.

## II. Standard of Review

 A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.,*

952 F.2d 802, 811 (4th Cir.1992) (internal citation and quotation omitted). In evaluating the propriety of a preliminary injunction, the Court must consider: (1) whether the plaintiff will suffer irreparable harm if the Court does not grant the injunctive relief; (2) the likelihood of harm to the defendant if the Court grants the injunctive relief; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 195–96 (4th Cir.1977).

## III. Analysis

### 1. Preliminary Injunction

The Court denies Plaintiff's Motion for a Preliminary Injunction because plaintiff will not suffer irreparable harm, the government and public face extensive harm, Plaintiff will probably not succeed on the merits, and the public interest falls on the side of the government rather than Plaintiff in this case.

 The Court finds that Plaintiff is not harmed by the contact information requirement because he does not anonymously post on his website and the requirement does not restrict the content of anonymous postings. Plaintiff argues that NTIA's contact information requirement violates his First Amendment right to remain anonymous when engaging in protected speech. *See* Pl.'s Br. at 10; *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 344, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (recognizing the First Amendment's protection of anonymity and striking down an Ohio campaign law prohibiting the distribution of anonymous pamphlets). Defendants argue that Plaintiff does not maintain his anonymity on his website and

---

**2.** The registration by proxy service that Plaintiff purchased from GoDaddy.com replaced Plaintiff's personal contact information with GoDaddy's Proxy Service contact information in the WHOIS and other databases. Def's Opp'n at 8.

therefore is not harmed by the contact information requirement. *See* Def.'s Br. at 12. Alternatively, Defendants argue that the contract information requirement does not restrict the content that may be posted on a website, does not prohibit the posting of anonymous communications, and if it regulates speech at all it is a content-neutral restrict on the time, place, and manner of speech. *Id.* at 19.

The Court finds that Plaintiff would not suffer any injury from the contact information requirement because he has already made such information readily available on his website. Plaintiff explicitly posts his full name, city of residence, membership in the Illinois Bar Association, filings in this lawsuit, and other identifying information on his website. *Id.* at 12. Plaintiff's street address is easily available from this information. By making so much personal information so easily available to members of the public, the Court finds that Plaintiff will not suffer any injury by complying with the NTIA's contact information requirement.

▮ Even if Plaintiff has not waived his right to anonymity, the contact information requirement does not restrict the content that may be posted on a website, does not prohibit anonymous submissions, and is, at most, a content-neutral restriction on the time, place or manner of speech. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (explaining that "[t]he principal inquiry in determining content neutrality, in speech cases generally, and in time, place and manner cases in particular is whether the government has adopted a regulation of speech because of disagreement with the message it conveys"). As a blanket requirement of *all* registrants of the ".us" domain name regardless of content, the contact information requirement is valid if: (1) it is narrowly tailored to serve (2) a significant governmental interests and (3) leaves open ample alternatives for communication. *Ward,* 491 U.S. at 789, 109 S.Ct. 2746. The contact information requirement easily satisfies this test because: (1) the contact information requirement seeks the minimum information necessary to directly and rapidly contact the domain holder—it does not ask for residential information or seek any information about the authors of the content of website; (2) the government has significant interests in preventing fraud and other on-line crime, protecting and policing copyright and trademark infringement, avoiding technical mishaps on the Internet, and complying with treaties that require a database of registrants of the ".us" domain; and (3) Plaintiff is free to publish his website on other domains which allow anonymity. *See* Def.'s Br. at 21.

Plaintiff attempts to analogize this situation to the Supreme Court's protection of anonymous pamphleteering. *See, e.g., McIntyre,* 514 U.S. at 357, 115 S.Ct. 1511 ("Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and dissent. Anonymity is a shield from the tyranny of the majority."). Unlike the pamphleteering cases, the contact information requirement does not prevent anonymous advocacy and dissent, but rather, like the permit cases, regulates the manner of the use of a public forum. *See, e.g., Thomas v. Chicago Park District,* 534 U.S. 316, 322, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (upholding an ordinance that required a permit for *any* use of a public park for more than fifty people). As the Supreme Court explained in *Thomas,* "the object of the permit system . . . is not to exclude communication of a particular content, but to . . . prevent uses that are dangerous, unlawful, or impermissible . . ., and to assure financial accountability for

damage caused by the event." *Id.* Like the permit system, the contact information requirement serves significant governmental interests, is narrowly tailored, and leaves ample room for alternative communications and therefore the Court finds that it does not violate Plaintiff's First Amendment right to anonymity.

■ The Court finds that the Defendants will be harmed by the issuance of a preliminary injunction because an injunction will harm the United States's ability to abide by its treaties, prevent the government from preserving the ".us" domain as a space for U.S. citizens and companies, and would leave the government and the public without protection or easy redress against technical problems, fraud, and trademark and copyright infringement on web sites within the domain. The United States is a party to treaties with several foreign governments in which each country has agreed to maintain an "accurate, searchable database of personal contact information for registrant" in each respective country. Def.'s Br. at 15. A preliminary injunction would prevent the United States from complying with these treaties. Furthermore, without the ministerial contact information, the United States could not determine whether registrants are United States citizens or corporations. As a result, the Court finds that the issuance of a preliminary injunction will significantly harm Defendants.

Plaintiff is not likely to prevail on his First Amendment argument because the contact information requirement does not restrict the content that may be posted on a website, does not prohibit anonymous submissions, and is at most a content-neutral restriction on the time, place or manner of speech. Whatever harm to Plaintiff is further mitigated by the substantial harm to the Defendants if the preliminary injunction is granted. There-

fore, the Court denies Plaintiff's Motion for a Preliminary Injunction because Plaintiff will not suffer irreparable harm, the government and public face extensive harm, Plaintiff will probably not succeed on the merits, and the public interest falls on the side of the government rather than Plaintiff in this case.

### 2. *Administrative Procedure Act*

■ The Court finds that NTIA did not violate the Administrative Procedure Act ("APA") by failing to provide public notice and comment before acting pursuant to its contract with NeuStar and the DoC statement of work to clarify the prohibition on anonymous registrations. 5 U.S.C. § 551, 553 (2000). The APA's notice, comment, and rulemaking requirements do not apply to agency action related to government contracts or benefits. *See* 5 U.S.C. § 553(a)(2) ("This section applies, . . . except to the extent that there is involved a matter relating to agency management or personnel or to public property, loans, grants, benefits, or *contracts*.") (emphasis added). NTIA's management of its contract with NeuStar by prohibiting anonymous registrations therefore falls outside of the APA's notice and comment requirements. Even if the decision to require contact information falls within the APA's notice and comment requirements, NTIA satisfied these requirements with the extensive public comment it solicited over the four years preceding its decision to expand the ".us" domain to public consumers. *See* Def.'s Br. at 4 (detailing the requests for and responses to public comments regarding the management and administration of the ".us" domain including the contact information requirement). Therefore, the Court finds that NTIA did not violate the APA because this contract with NeuStar is not subject to the notice and comment provisions of the APA, and

even if it were, NTIA complied with the APA's requirements when it promulgated the rule in its statement of work.

### 3. Standing

■ The Court denies Plaintiff's Motion for Preliminary Injunction because Plaintiff has not shown a potential injury in fact and therefore does not have standing to bring a claim against NTIA. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130. The constitutional minimum of standing contains three elements. *Id.* First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, *Id.*; see *also Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 740–741, n. 16, 92 S.Ct. 1361, 31 L.Ed.2d 636, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" *Whitmore, supra,* 495 U.S. at 155, 110 S.Ct. 1717 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.,* at 38, 43, 96 S.Ct. 1917.

Here, Mr. Peterson argues that he would be injured if NTIA forces him to release his contact information because he has First Amendment right to remain anonymous when engaging in protected speech on his website. (*See* Pl.'s Br., at 10.) He also argues that releasing such information is *per se* harm because it involves the loss of his First Amendment Freedom and would chill his free speech. (See Pl.'s Br. in Reply, at 2–3.)

■ The Court disagrees for two reasons. First, the Court finds that requiring Plaintiff's information is not a *per se* harm because, as discussed above, it is a content-neutral restriction on the time, place or manner of speech. "The principle inquiry in determining content neutrality, in speech cases generally, and in time, place and manner cases in particular is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (reasoning that restrictions that regulate time, place or manner of speech are content-neutral restrictions). As a blanket requirement of *all* registrants of the ".us" domain name regardless of content, the contact information requirement is valid if: (1) it is narrowly tailored to serve (2) a significant governmental interest and (3) leaves open ample alternatives for communication. *Ward,* 491 U.S. at 789, 109 S.Ct. 2746. The contact information requirement easily satisfies this test because: (1) the contact information requirement seeks the minimum information necessary to directly and rapidly contact the domain holder—it does not ask for residential information or seek any information about the authors of the content of website; (2) the government has significant interests in preventing fraud and other on-line crime, protecting and policing copyright and trademark infringement, avoiding technical mishaps on the Internet, and complying with treaties that require a database of registrants of the ".us" domain; and (3) Plaintiff is free to publish his website on other domains which allow anonymity. *See* Def.'s Br., at 21. Therefore, the Court

finds that requiring Plaintiff's information is not a *per se* harm because it is a content-neutral restriction on the time, place or manner of speech.

Second, the Court finds that Plaintiff would not suffer any injury from NTIA's contact information requirement because he has already made such information readily available on his website. Plaintiff explicitly posts his full name, city of residence, membership in the Illinois Bar Association, filings in this lawsuit, and other identifying information on his website. (*Id.* at 12.) Because the information is already on his website, Mr. Peterson cannot show that by complying with the requirement he would suffer an injury in fact.

Therefore, the Court denies Plaintiff's Motion for a Preliminary Injunction because Mr. Robertson has not shown a potential injury in fact and therefore does not have standing to bring a claim against NTIA.

### IV. Conclusion

For the reasons discussed above, the Court DENIES Plaintiff Robert Peterson's Motion for a Preliminary Injunction.

It is hereby

ORDERED that Plaintiff's Motion for a Preliminary Injunction is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.